IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br>v.<br><br>CONSTANTIN KOTZEV, *et al.*,<br>   Defendants. | )<br>)<br>)<br>) Civil Action No. 1:18-cv-1409<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION

At issue in this action to enforce a judgment lien against real property is Plaintiff's Motion for Summary Judgment (Dkt. 83). Plaintiff's Motion has been fully briefed and argued at a hearing on August 13, 2021, and is therefore ripe for disposition. For the reasons that follow, the undisputed factual record convincingly establishes that it is appropriate to grant summary judgment in Plaintiff's favor.[1]

### I.

Plaintiff complied with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56 by setting forth a statement of undisputed material facts in separately numbered paragraphs. Defendants also complied with Local Rule 56 by responding to each of the facts listed by Plaintiff and identifying purported factual disputes. Defendants also provided a separate statement of undisputed material facts, to which Plaintiff responded. The following facts are derived from the undisputed facts identified by the parties and the evidentiary record.

- On December 18, 1998, Defendant Constantin Kotzev ("Kotzev") purchased, in fee simple, a condominium at 3800 Fairfax Drive, Unit 1505, in Arlington, Virginia.

---

[1] Also before the Court is Plaintiff's Motion in *Limine* to strike Defendants Angelika Chyla and George Chyla's request for a jury trial (Dkt. 102). However, because summary judgment will be granted in Plaintiff's favor, it is unnecessary to reach or decide the arguments presented in the Motion in *Limine*.

1

- On June 17, 1999, Kotzev purchased, in fee simple, a parking space located at 3800 Fairfax Drive, Unit P3-51 in Arlington, Virginia. The condominium and parking space at 3800 Fairfax Drive are hereinafter referred to as the "Real Properties."

- Defendants Angelika Chyla and George Chyla (the "Chylas") are Kotzev's niece and nephew, respectively. The Chylas reside in Poland.

- In May 2000, Kotzev and the Chylas signed an agreement in which Kotzev agreed to transfer the Real Properties to the Chylas by deed. In exchange, the Chylas agreed to provide support for Kotzev upon Kotzev attaining the age of seventy-five or becoming infirm. But Kotzev did not, at that time, execute or record any deeds to transfer the Real Properties to the Chylas. Additionally, neither Kotzev nor the Chylas ever recorded the contract in the land records of Arlington County, Virginia, where the Real Properties are located.

- In November 2011, the Internal Revenue Service ("IRS") issued a letter to Kotzev advising him that the IRS was auditing his tax return for the year 2008.

- In June 2012, the IRS issued a summons to Kotzev related to the audit. On July 11, 2012, Kotzev attended an in-person interview with the IRS in New York City.

- At the July 11, 2012 interview, Kotzev denied holding any foreign bank accounts. At the end of the interview, Kotzev also completed a form, under penalty of perjury, in which Kotzev checked "no" to holding bank accounts in various foreign countries.

- On October 11, 2012, the IRS sent Kotzev a letter which stated that the IRS had received "documentation . . . indicating that [Kotzev] had an interest in foreign bank account(s)." The letter instructed Kotzev to produce relevant documents in order to "avoid the

commencement of legal action." Thereafter, Kotzev communicated with the IRS through an attorney.

- In January 2013, the IRS also began to investigate Kotzev's tax returns for the years 2006 and 2007.

- On February 8, 2013, the IRS issued summons to Kotzev which required Kotzev to produce any foreign bank account records. Kotzev responded, through his attorney, that he did not possess any relevant records.

- On December 6, 2013, Kotzev executed and recorded documents titled "Deed[s] of Gift," which transferred Kotzev's interest in the Real Properties to the Chylas. The deeds indicated that the Real Properties had been exchanged for $10.00 and other unspecified consideration. In deposition testimony, Kotzev stated that he considered these transfers to be gifts. The Deeds were marked with "§ 58.1-811(D)," which references a provision of Virginia law exempting gift deeds from the state recordation tax.

- At the time of the transfer, Kotzev considered the condominium to be worth approximately $400,000. Kotzev's only other tangible asset was an automobile.

- Despite the transfer of the Real Properties, Kotzev continues to live alone in the condominium and continues to be the sole user of the parking space. The Chylas do not use the condominium or the parking space.

- Kotzev pays all condominium fees, property taxes, and utilities associated with the Real Properties. The Chylas do not contribute to any of these expenses.

- The Chylas receive no substantive mail at the 3800 Fairfax Drive address other than property tax bills, which Kotzev pays.

- In August 2017, Kotzev submitted a payment of $723,387.85 to the IRS to cover liabilities for unpaid taxes for the years 2006 through 2008.

- In 2017, the United States filed a civil action against Kotzev in the United States District Court for the Eastern District of Virginia related to Kotzev's failure to disclose his interest in foreign bank accounts. On December 28, 2017, the court entered a monetary judgment against Kotzev in the amount of $1,297,695.43, plus interest. *See United States v. Kotzev*, Civ. Action No. 17-cv-818-AJT-IDD (E.D. Va.).[2]

- On April 19, 2018, the United States recorded the judgment through the Arlington County Clerk's Office in the land records of Arlington County, Virginia.

- The United States ("Plaintiff," herein) has now initiated this action, seeking to enforce its judgment lien by foreclosing on the Real Properties.

## II.

The well-settled standard for summary judgment does not require extensive elaboration here. Summary judgment is appropriate when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, a fact must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

In this action, Plaintiff—seeking to enforce a judgment lien under Virginia law—contends

---

[2] Specifically, the December 2017 judgment constituted penalties for Kotzev's failure to file Foreign Bank and Financial Accounts Reports ("FBARs") for the years 2008 to 2012.

4

that the transfer of the Real Properties from Kotzev to the Chylas must be set aside as fraudulent. Virginia law permits courts to set aside two types of transfers: constructive fraudulent transfers and actual fraudulent transfers. Under a theory of constructive fraudulent transfer, a "voluntary conveyance is void as to a prior creditor" when three elements are met. *Hudson v. Hudson*, 249 Va. 335, 340 (1995) (citing Va. Code § 55.1-401). Specifically, the elements designated by the state statute are: "(1) the transfer was not made upon consideration deemed valuable in law . . . ; (2) the transfer was made by an insolvent transferor, or by a transferor who was rendered insolvent by the transfer; and (3) the transferor's debt to the creditor was contracted before the time of the transfer." *Id.*

To continue, actual fraudulent transfers may be set aside under Virginia law pursuant to Va. Code § 55.1-400. To prove an actual fraudulent transfer, a party must establish the following elements:

> (1) a conveyance, (2) that was given with the intent to delay, hinder, or defraud creditors, (3) who were lawfully entitled to the subject of the conveyance, and (4) the purchaser either did not provide valuable consideration or had knowledge of the fraud or the fraudulent intent of the immediately prior grantor.

*C.F. Trust v. Peterson*, No. 97-cv-2003, 1999 WL 33456231, at *7 (E.D. Va. Jan. 8, 1999) (citing *Balzer & Assocs. v. The Lakes on 360, Inc.*, 463 S.E.2d 453, 455 (Va.1995)). With respect to the second element, fraudulent intent may be established circumstantially through so-called "badges of fraud," which include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; (6) fraudulent incurrence of indebtedness after the conveyance . . . [;] (7) close relationship of the parties; and (8) insolvency of the grantor.

*C.F. Trust*, 1999 WL 33456231 at *8. If a plaintiff establishes a *prima facie* case of fraud by

demonstrating one or more of these badges, the burden shifts to the defendant to "establish the *bona fides* of the transaction." *First Nat. Bank of Bluefield v. Pressley*, 176 Va. 25, 28 (1940).[3]

The undisputed factual record in this matter convincingly establishes that Kotzev's December 2013 conveyance of the Real Properties satisfies the elements of both constructive and actual fraudulent transfer. As an initial matter, it is worth emphasizing that the parties broadly agree about the operative facts of this case. First, the parties agree that Kotzev and the Chylas signed an agreement regarding transfer of the Real Properties in May 2000, but that Kotzev did not execute any deeds at that time or record the agreement in county land records. Second, the parties agree that the IRS began to audit Kotzev's tax returns as early as 2011, including by interviewing Kotzev and issuing summons in 2012 and 2013. Third, the parties agree that Kotzev transferred the Real Properties by "Deed[s] of Gift" to the Chylas in December 2013, but that Kotzev continued to be the sole user of, and to pay all fees associated with, the Real Properties. Finally, the parties agree that, in December 2017, the United States secured a $1.3 million judgment against Kotzev for failure to file FBARs for years 2008 to 2012, and that a judgment lien attached to Kotzev's assets in Arlington County after the United States recorded the judgment. Accordingly, a careful review of the record reveals no genuine disputes of material fact; rather, the parties disagree about the legal effect of the facts presented.

With respect to constructive fraudulent transfer, the undisputed facts leave no plausible doubt that the December 2013 conveyance satisfies the three elements outlined by the Supreme Court of Virginia in *Hudson*, 249 Va. at 340. First, the record discloses no "consideration deemed

---

[3] In addition to Virginia law, the parties also extensively discuss federal law. Because Plaintiff seeks to enforce a judgment lien recorded pursuant to Virginia law, Virginia law is the proper focal point of this analysis. However, in any case, federal law—as set forth in the Federal Debt Collection Practices Act—defines constructive and actual fraudulent transfers in nearly identical terms to Virginia state law. *See* 28 U.S.C. § 3304(a) (defining constructive fraudulent transfers); 28 U.S.C. § 3304(b) (defining actual fraudulent transfers).

valuable in law" in support of the conveyance. *Id.* Kotzev considered the conveyance to be a gift and transferred the Real Properties in instruments entitled "Deed[s] of Gift," which took advantage of a Virginia tax exemption for gift transfers. The only consideration explicitly referenced by the Deeds is a sum of $10.00 dollars—just 0.0025% of the $400,000 value of the condominium estimated by Kotzev—and nothing in the record indicates that the Chylas paid even that *de minimus* sum.[4]

Defendants contend that consideration was supplied by the promise of future care expressed in the May 2000 agreement between Kotzev and the Chylas. That argument fails for three reasons. First, the "Deed[s] of Gift" do not reference or incorporate the May 2000 agreement.[5] Second, Defendants never recorded the May 2000 agreement in the Arlington County land records and therefore that agreement has no legal effect on a subsequent claim by a creditor. Va. Code § 55.1-407(A)(1) (contracts to transfer property are void against lien creditors until recorded). Third, even if the May 2000 agreement had legal effect, there is significant doubt that a promise of far-off future care constitutes consideration deemed valuable in law. *See, e.g.,* 28 U.S.C. § 3303(a) (under the Federal Debt Collection Procedures Act, "value does not include an unperformed promise made . . . to furnish support to the debtor").

With respect to the second element of constructive fraudulent transfer, the record leaves no doubt that Kotzev was insolvent following transfer of the real properties. Put simply, an individual is insolvent "when he has insufficient property to pay all his debts," meaning that "both the value

---

[4] In response to discovery requests from Plaintiff, the Chylas admitted that they paid no monetary compensation in exchange for the Real Properties.

[5] Under Virginia law, "When the language of a deed is clear, unambiguous, and explicit, a court interpreting it should look no further than the four corners of the instrument under review." *Virginia Elec. & Power Co. v. N. Virginia Reg'l Park Auth.,* 270 Va. 309, 316 (2005) (quotation marks and citation omitted). Here, the plain and unambiguous text of the Deeds makes clear that the Real Properties were transferred as gifts for *de minimus* consideration.

7

of the debtor's assets and the amount of his liabilities must be established." *Hudson*, 249 Va. at 340. In this case, Kotzev's tax violations in the years 2006 to 2012 resulted in liabilities which exceeded $2 million, the sum of Kotzev's July 2017 payment to cover back taxes and the December 2017 judgment for penalties resulting from Kotzev's failure to file FBARs. By contrast, Plaintiff submitted an uncontested fact, which Defendants did not dispute, that Kotzev's only asset following transfer of the Real Properties was a single automobile. Accordingly, there is no dispute that Kotzev's debts exceeded his assets after the real properties were transferred.

The only remaining question in the constructive fraudulent transfer analysis is *when* Kotzev's tax-related liabilities arose, which impacts both the insolvency analysis and the third element, namely that the debt must have existed prior to the transfer. With respect to the $1.3 million judgment, Plaintiff argues that the debt arose when Kotzev failed to file the requisite FBARs from 2009 to 2013; Defendants assert that the debt did not exist until penalties were assessed in 2017. Persuasive authority from other circuits confirms that Plaintiff is correct: "FBAR liability accrue[s] not on the date of the assessment" but on the date the "FBAR form was due," because the liability arises under the tax code and not the assessment. *United States v. Park*, 389 F. Supp. 3d 561, 574 (N.D. Ill. 2019). *See also In re Mallo*, 774 F.3d 1313, 1326 (10th Cir. 2014) ("A tax debt is created by the Tax Code, not the assessment process.") (citing *United States v. Galletti*, 541 U.S. 114, 122 (2004)); *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008).[6] Accordingly, Kotzev's liability for failure to file FBARs pre-existed the transfer of the Real Properties because Kotzev's failure to file the relevant forms occurred before December 2013. Thus, the undisputed factual record in this matter confirms that the December 2013 transfer of the

---

[6] Defendants cite no contrary authority in support of their position that liability for failure to file FBARs accrues at the time of assessment.

8

Real Properties satisfies the three elements of constructive fraudulent transfer and must therefore be set aside under Virginia law.

In the alternative, the undisputed factual record regarding the transfer of the Real Properties also plainly satisfies the four elements of actual fraudulent transfer under Virginia law. The first, third, and fourth elements do not require extensive elaboration. With respect to the first element, which requires a conveyance of property, there is no dispute that Kotzev transferred the Real Properties to the Chylas by "Deed[s] of Gift" in December 2013. Similarly, under the third element, there is no dispute that the United States is a valid creditor with respect to Kotzev's assets. Finally, the fourth element requires that the transferee "either did not provide valuable consideration or had knowledge of the fraud or the fraudulent intent of the immediately prior grantor." *C.F. Trust*, 1999 WL 33456231 at \*7. For reasons stated *supra*, the undisputed factual record makes clear that Kotzev's transfer of real property took the form of a gift transfer for *de minimus* consideration. Accordingly, because the Chylas did not provide valuable consideration for the Real Properties, the fourth element is also satisfied.

To continue, the second element of actual fraudulent transfer requires that property was "given with the intent to delay, hinder, or defraud creditors." *C.F. Trust*, 1999 WL 33456231 at \*7. As stated, the requisite fraudulent intent may be established by proof of one or more "badges" of fraud. *Id.* The undisputed factual record makes clear that several badges of fraud are inarguably satisfied by Kotzev's transfer of the Real Properties:

- First, Kotzev plainly retained a possessory interested in the Real Properties. Indeed, Kotzev is the sole resident of the condominium and the sole user of the parking space. Additionally, Kotzev pays all fees and taxes associated with the Real Properties, and nothing in the record indicates that the Chylas have ever made use of the Real Properties.

- Second, Kotzev transferred the properties to recipients with whom he shares close familial ties.

- Third, Kotzev transferred the properties at a time that he was under a clear threat of litigation from his creditor, *i.e.* the United States. It is important to note that all of Kotzev's relevant violations of federal tax law pre-dated the transfer and Kotzev's liabilities had therefore already accrued. *See, e.g., In re Mallo*, 774 F.3d at 1326. Moreover, the IRS had already begun investigating Kotzev's tax violations in earnest, first communicating with Kotzev by letter in November 2011. By December 2013, Kotzev had been interviewed by the IRS under penalty of perjury, received multiple summons and a letter which requested production of documents to "avoid the commencement of legal action," and begun to communicate with the IRS through an attorney.[7]

- Fourth, as noted, the undisputed factual record clearly discloses that Kotzev was insolvent following the December 2013 transfer.

- Fifth, and finally, the undisputed factual record makes clear that the Real Properties were transferred for *de minimus* consideration. As noted, the relevant deeds described the transfers as gift transfers, Kotzev himself described the conveyance as a gift, and the Chylas admitted that they paid no money for the properties.

In sum, because the undisputed facts satisfy several relevant badges of fraud, Plaintiff has clearly carried its burden to establish a *prima facie* case of fraudulent intent.

---

[7] Defendants attempt to avoid the plain conclusion that Kotzev was under threat of litigation in December 2013 by contending that the IRS's formal investigation into Kotzev's failure to file FBARs may have commenced after that date. But the precise point at which the IRS's investigation transitioned from a primary focus on Kotzev's inadequate tax filings to a primary focus on Kotzev's failure to disclose foreign bank accounts is irrelevant. There is no genuine dispute that the IRS began investigating Kotzev well before the transfer and that Kotzev was under clear threat of some form of tax-related litigation by the United States in December 2013.

The Supreme Court of Virginia has made clear that, when a plaintiff satisfies this *prima facie* showing, the burden shifts to a defendant to "establish the *bona fides* of the transaction." *White v. Llewellyn*, 857 S.E.2d 388, 392 (2021). In this regard, a defendant must show "strong and clear evidence" that "gives a countervailing explanation for the opposing party's badges of fraud." *Id.* at 392–93. Here, Defendants attempt to conjure *bona fides* out of the unrecorded May 2000 agreement between Kotzev and the Chylas, but that agreement is patently insufficient in that respect. As noted, the May 2000 agreement was not incorporated into the December 2013 deeds and, because the agreement was never recorded, is also void against lien creditors like Plaintiff. Moreover, the May 2000 agreement fails to provide a strong "countervailing explanation" for the badges identified above. For example, nothing in the agreement required Kotzev to wait over thirteen years to execute deeds transferring the Real Properties. Accordingly, the record contains no evidence to dispel the presumption of fraud created by the fact that Kotzev, following two years of investigation by the IRS, transferred all of his assets other than an automobile to family members in a gift deed.

In summary, the undisputed factual record leaves no plausible doubt that the December 2013 transfer meets the elements of both constructive and actual fraud under Virginia law. Accordingly, that transfer must be set aside, and it is appropriate to grant summary judgment in Plaintiff's favor.

It is important to note that nothing in this Memorandum Opinion is intended to suggest that the Chylas acted with fraudulent intent or anything other than a genuine commitment to provide support for Kotzev in his old age. However, the Chylas' intent is legally irrelevant in light of the undisputed facts presented here. Under Virginia law, a transfer may be set aside as fraudulent, irrespective of the recipients' intent, where, as here, the transfer is not supported by valuable

consideration. As noted, the December 2013 conveyance effectively took the form of a gift transfer. Accordingly, the Chylas' intent has no bearing on the outcome of this action, and therefore no jury issue is presented.

Instead of the Chyla's intent, it is Kotzev's undisputed actions and intent that are relevant and dispositive in this matter. Although Kotzev may have contemplated transferring the Real Properties to the Chylas in May 2000, Kotzev did not execute that plan for over thirteen years, by which time his assets had become subject to substantial tax penalties. By December 2013, Kotzev had accrued several years of tax code violations and had become the subject of a serious IRS investigation. Furthermore, Kotzev transferred the Real Properties for *de minimus* consideration via "Deed[s] of Gift," and Kotzev's use and possession of the Real Properties continued undisturbed following execution of the deeds. Given these undisputed facts, the December 2013 transfer must be set aside as fraudulent pursuant to Virginia law.

### III.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment must be granted. Additionally, Plaintiff's pending Motion in *Limine* to strike the Chyla Defendants' request for a jury trial must be denied as moot. An Order on Plaintiff's motions, as well as an appropriate Order of Sale, will issue separately. The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
January 24, 2022

/s/
T. S. Ellis, III
United States District Judge